IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN W. WOODSON, JR., | ) | Case No. 1:20-cv-288 Erie |
| Plaintiff | ) | RICHARD A. LANZILLO UNITED STATES MAGISTRATE JUDGE |
| v. | ) | |
| JODI SHEESLEY, et al., | ) | MEMORANDUM OPINION ON DEFENDANT'S MOTION FOR SANCTIONS |
| Defendants | ) | ECF No. 65 |

I. Introduction

Plaintiff Steven W. Woodson, Jr., an inmate incarcerated at the State Correctional Institution at Forest (SCI-Forest), initiated this pro se civil rights action on September 28, 2020. *See* ECF No. 1. In his Amended Complaint – the operative pleading in this action – Woodson alleged that prison officials violated his Eighth and Fourteenth Amendment rights by ignoring his frequent threats to commit acts of self-harm. *See* ECF No. 27 at ¶¶ 12-39. With respect to moving Defendant Angel Gressel, a Nurse Practitioner at SCI-Forest, Woodson alleged that he informed Gressel that a voice in his head was urging him to harm himself and that he was having visions of his arm "all cut up." *Id.* ¶¶ 14-17, 21-23. Woodson also alleged that he had previously engaged in acts of self-harm on December 12, 2019 and December 23, 2019. *Id.* ¶ 24. Despite this, Gressel allegedly instructed him to "try not to hurt [him]self" and to "find something to occupy [his] mind." *Id.* ¶¶ 18-19. Later that day, Woodson "seriously" cut himself while in his cell. *Id.* ¶¶ 26-27.

On October 28, 2021, the undersigned issued a Report and Recommendation that Gressel's motion to dismiss be granted as to Woodson's equal protection and state law medical

negligence claims but denied as to his Eighth Amendment claim and his negligence claim based on a complete denial of medical care. ECF No. 44. United States District Judge Susan Paradise Baxter adopted the Report and Recommendation by Memorandum Order issued on December 20, 2021. ECF No. 49. Gressel filed an answer on April 21, 2022, and this case proceeded to discovery. *See* ECF Nos. 58, 60.

On June 27, 2022, Gressel filed the instant motion for sanctions based on several inappropriate, offense, and obscene letters that Woodson mailed to Gressel's attorney under the guise of settlement offers. ECF No. 65. Gressel has submitted copies of the letters under seal for the Court's examination. ECF Nos. 67-70.

The first letter, dated February 25, 2022, is titled "Initial Written Offer of Settlement." ECF No. 67. It begins with a "definitions" section in which Woodson provides his own definitions of various intimate body parts, sexually explicit acts, and other obscene and inappropriate words and phrases.[1] ECF No. 67 at 1-2. Plaintiff goes on to describe, in graphic detail, his request for various obscene images, pornographic magazines, and erotic books as partial settlement for his claim.[2] *Id.* at 3-6. He also asks for such oddities as "pregnancy magazines" and "massage school quality books/manuals" on "massaging females" and "massaging pregnant women." *Id.* at 6. Finally, Woodson requests that Gressel send him 300 pornographic images, characterized as "Hot Shots," for which he has supplied detailed, lurid

[1] In one of his milder definitions, Woodson defines "sexy" to mean: "pretty face; nice legs; "b", "c", "d" cup breast; pretty feet, and an ass that's more than a handful, but less than about forty (40) inches around." *Id.* at 2.

[2] Woodson also includes a financial demand.

descriptions.[3] *Id.* at 6-11. Most disturbingly, Woodson attached 23 pornographic images to the letter to demonstrate the precise type of pornography he is seeking. *Id.*

On March 18, 2022, Woodson sent a second "Written Offer of Settlement" to Gressel's counsel. ECF No. 68. Woodson again requested obscene materials including photo books, erotic and sexually explicit novels, and pornographic magazine subscriptions. *Id.*

Woodson sent a third purported offer of settlement on March 28, 2022. ECF No. 69. Among his requests: "a book of women being given non-erotic massages with the photographs showing the women completely naked from both the front & back of their bodies," "two (2) photo illustrated obstetric and gynecology books," "a book on breast augmentation with photographs of women before, during, and after the surgery," "books with photographs of naked pregnant women having home-births and in the various birthing positions," several magazine subscriptions, and three erotic novels featuring such oddly specific topics as mother-son and sibling incest, "nuns having sex," and "male bosses having sex with their employee's wives." *Id.* Woodson's final settlement letter, sent on April 25, 2022, contained similar requests. ECF No. 70.

Based on the graphic, vulgar and harassing nature of these "settlement letters," Gressel requests that Woodson's remaining claims against her be dismissed as a sanction. ECF No. 65. Woodson, in response, maintains that the pornographic items he requested are "well within the parameters of what is acceptable in the DOC" and that his requests "[were] not in any way intended to harass, cause unnecessary delay, or increase the cost of litigation." ECF No. 72 at 1-2. Woodson avers that the images and descriptions that he sent were merely "helping aids" to

[3] By way of example, one of Woodson's tamer requests is for "five (5) shorts of different nude, sexy, young white women in the shower, under the water, leaning forward with their arms out in front, hands on the wall, feet spread, with big butts, shot from behind with picture of the full body." *Id.* at 7. Many of his requests are far more graphic.

ensure that opposing counsel could deliver the precise types of pornography he is seeking. *Id.* at 3. Woodson concludes that his conduct "does not merit a Complete Dismissal of his claims, but merit[s] a warning instead." *Id.* at 4.

II. Analysis

As the basis for her request for sanctions, Gressel invokes Rule 11 of the Federal Rules of Civil Procedure which requires a party to certify that any "pleading, written motion, or other paper" filed or submitted to the court "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). A court may order sanctions for a violation of Rule 11 "after notice and a reasonable opportunity to respond." Fed. R. Civ. P. 11(c)(1). Gressel contends that Rule 11 sanctions are warranted because "the sending of sexually explicit letters and images under the guise of a 'settlement' letter was clearly done for improper purposes, was unreasonable under the circumstances and resulted in harassment of counsel and Defendant." ECF No. 66 at 4.

As will be discussed more thoroughly below, the Court agrees that Woodson's letters served no purpose other than to harass and demean defense counsel and her client. That said, it is not clear whether Rule 11 applies to the settlement letters at issue. As a general matter, "letters and correspondences are not considered 'other papers' or 'filings with the District Court'" as described in Rule 11. *Pritchard v. Dow Agro Sciences*, 2009 WL 1813145, at *6 (W.D. Pa. June 25, 2009) (quoting *VDI Techs. v. Price*, 781 F.Supp. 85, 95 (D.N.H. 1999)); GREGORY F. JOSEPH, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE § 5(D)(2) (a) (4th ed. 2008) ("A paper—like a letter—that has not been, or is not required to be, presented to the court is not a 'paper' for which Rule 11 sanctions are available."). Because

Woodson's letters were never intended for filing or presentation to the Court, they appear to fall outside of the purview of Rule 11.

Nevertheless, "[a] federal court has the authority to, and must not avoid the responsibility for, monitoring the conduct of all litigants and attorneys who come before it." *Derzack v. Cnty. of Allegheny, Pa.*, 173 F.R.D. 400, 411 (W.D. Pa. 1996), *aff'd sub nom. Derzack v. Cnty. of Allegheny Child. & Youth Servs.*, 118 F.3d 1575 (3d Cir. 1997). The inherent powers of federal courts include the "well-acknowledged" power "to levy sanctions in response to abusive litigation practices." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980) (citations omitted).[4] Among other things, these sanctions include the ultimate sanction of dismissal and the less severe sanction of an assessment of attorney's fees. *Chambers v. NASCO, Inc.,* 502 U.S. 32, 45 (1991) (citations omitted). A court may assess attorney's fees against a responsible party "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" or when it finds that "fraud has been practiced upon it, or that the very temple of justice has been defiled." *Id.* at 45–46 (citations omitted). The most drastic sanction of dismissal "should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff." *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 866 (3d Cir. 1984).

The Court of Appeals for the Third Circuit has set out a six-factor balancing test to guide a court in determining whether a case or claim should be dismissed as a sanction for dilatory

---

[4] In addition to Rule 11, several other statutory and procedural rules of conduct authorize the imposition of sanctions. *See Derzack v. County of Allegheny, Pa.*, 173 F.R.D. 400, 412 (W.D. Pa. 1996) (noting that "courts derive their authority and obligation to monitor and control the conduct of litigation from many sources, including statutory (e.g., 28 U.S.C. § 1927) and procedural (e.g., Fed. R. Civ. P. 11(c), 16(f), 37(b), 41(b), 55)"). Each of these sources is typically "tailored to certain categories of participants or aspects of litigation, and ... subject to procedural and substantive limitations peculiar to each." *Id.* Thus, where misconduct clearly implicates a specific rule or statute, the court should ordinarily resort to that rule or statute when crafting a sanction or discipline. *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995). Where no rule applies, however, the court's "inherent power is broad and can be called upon ... to fill-in the interstices between particular rules of conduct." *Derzack*, 173 F.R.D. at 412 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-50 (1991)).

behavior or misconduct. *See Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984). The court must consider: 1) the extent of the party's personal responsibility; 2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; 3) a history of dilatoriness; 4) whether the conduct of the party or attorney was willful or in bad faith; 5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and 6) the meritoriousness of the claim or defense. *Id.* at 868.[5] There is no "magic formula" or "mechanical calculation" to determine whether a case should be dismissed for failure to prosecute, *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992), and not all six factors need to weigh in favor of dismissal before dismissal is warranted. *Hicks v. Feeney*, 850 F.2d 152 (3d Cir. 1988). Rather, the court must "properly consider and balance" each of the six factors based on the record. *See Hildebrand v. Allegheny County*, 923 F.3d 128, 132 (3d Cir. 2019) (citing *Poulis*, 747 F.2d at 868).

As recently emphasized by the Court of Appeals, "dismissal with prejudice is an 'extreme' sanction" that should be employed as a "last, not first, resort." *Hildebrand*, 2019 WL 1783540, at *3 (quoting *Nat'l Hockey League v. Metro Hockey Club, Inc.*, 427 U.S. 639, 643 (1976), and *Poulis*, 747 F.2d at 867, 869). Close calls should "be resolved in favor of reaching a decision on the merits." *Id.* (citing *Adams v. Trs. of the N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 870 (3d Cir. 1994)). Nevertheless, the Court of Appeals "has not hesitated to affirm the district court's imposition of sanctions, including dismissals in appropriate cases." *Id.* (citing *Poulis*, 747 F.2d at 867 n. 1).

---

[5] The *Poulis* factors are tailored towards dilatory conduct by a litigant, typically in the nature of a failure to prosecute a case. As such, certain elements, such as the failure to meet scheduling orders and respond to discovery requests, are less applicable in cases where the sanctionable conduct at issue involves harassment or fraud. Under such circumstances, the Court may instead consider "the impact on the judicial system and the threat to the integrity of the courts." *See Derzack*, 173 F.R.D. at 414 ("Where fraud on the court is the underlying misconduct upon which the district court is considering dismissal, a modified *Poulis* analysis provides the most suitable framework").

Before analyzing the *Poulis* factors, the Court wishes to emphasize the extraordinarily inappropriate, vulgar, and puerile nature of Woodson's letters. Littered with pornographic images, graphic descriptions of sexual acts, and perverse requests for obstetric and gynecological materials, Woodson's letters cannot, under any circumstances, be construed as reasonable and legitimate settlement proposals. As Gressel notes in her motion, the provoking nature of Woodson's communications is further underscored by his near-certain awareness that most of the materials he is seeking would be illicit contraband under prison regulations.[6] *See* ECF No. 66 at 4 (quoting DOC Policy, DC-ADM 803, defining "obscene material"). By sending these requests, Woodson has transgressed all acceptable boundaries of appropriate conduct and, in the estimation of this Court, "defiled . . . the very temple of justice." *Chambers,* 502 U.S. at 45 (quoting source omitted). Some form of sanction is clearly warranted.

In determining whether that sanction should include dismissal, the Court first must consider the extent to which the responding party is personally responsible for the sanctionable conduct. *Adams v. Trs. of the N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 870, 873 (3d Cir. 1994) ("[I]n determining whether dismissal is appropriate, we look to whether the party bears personal responsibility for the action or inaction which led to the dismissal."). There is no question that Woodson was solely responsible for his decision to send obscene and vulgar materials to Gressel and her attorney. While Woodson attempts to deflect blame by noting that he is "far from versatile in the vernacular of the various peoples of the 'Upper-Class', such as lawyers, judges, executives, teachers, or even a collegian," the Court rejects the notion that an advanced education is required for an individual to understand that it is inappropriate to send

[6] The same is true of the thumbnail images attached to Woodson's first settlement letter. The Court trusts that defense counsel has, in her discretion, submitted copies of those letters to the appropriate officials at Woodson's institution.

unsolicited pornography. Woodson's dogged insistence that his letters amounted to legitimate settlement demands is untenable and unpersuasive. This factor weighs heavily in favor of dismissal.

The second *Poulis* factor assesses whether the adverse party has suffered prejudice because of the dilatory party's behavior. While this factor primarily addresses the evidentiary burdens and costs associated with the offending party's misconduct,[7] *see Adams*, 29 F.3d at 874, it also considers "the extra costs of repeated delays in filing of motions necessitated by the improper behavior." *Derzack*, 173 F.R.D. at 415 (noting that defendants "had to endure protracted satellite litigation in discovering the extent of plaintiffs' deceit and in pursuing an appropriate remedy for their fraud on the court"). Here, Gressel's motion for sanctions was clearly necessitated by Woodson's improper behavior, tilting this factor in favor of dismissal.

The third *Poulis* factor – a history of dilatoriness – also supports the need for sanctions, albeit minimally. While Woodson's misconduct is not directly associated with the type of dilatory behavior that this factor normally addresses, the Court notes that his actions have impeded the timely progression of this lawsuit by shifting the focus from the underlying merits to the impropriety of his behavior. This digression will almost certainly require an extension of the existing deadlines for discovery and post-discovery motions, hampering the parties' efforts to resolve this action in an efficient manner.

With respect to the fourth *Poulis* factor, "[w]illfulness involves intentional or self-serving behavior." *Adams*, 29 F.3d at 874. This factor strongly supports the imposition of some sort of sanction. Given his familiarity with the applicable prison regulations, it can be strongly inferred that Woodson knew that his inappropriate requests could not have been granted. As such, the

---

[7] Typical examples include the loss of evidence or the diminishment of witness recollection stemming from an inordinate delay.

Court concludes that the most likely purpose behind Woodson's letters was to either intentionally harass an opposing party and her attorney or to engage in provoking behavior for his own self-serving amusement and gratification. Whichever the case, this factor supports dismissal.

The fifth factor addresses the effectiveness of sanctions other than dismissal. *Poulis*, 747 F.2d at 869. Courts have frequently observed that monetary sanctions may be ineffective where the Plaintiff is indigent. *See*, *e.g.*, *Brennan v. Clouse*, 2012 WL 876228, at *3 (W.D. Pa. Mar. 14, 2012) (citing *Emerson v. Thiel College*, 296 F.3d 184, 191 (3d Cir. 2002)). On the other hand, "dismissal with prejudice is an 'extreme' sanction" that should be employed as a "last, not first, resort." *Hildebrand*, 2019 WL 1783540, at *3 (quoting *Nat'l Hockey League v. Metro Hockey Club, Inc.*, 427 U.S. 639, 643 (1976), and *Poulis*, 747 F.2d at 867, 869). Given the serious nature of Woodson's claims, discussed below, this factor cuts slightly against dismissal.

Next, the Court must consider the potential merit of Plaintiff's claims. A claim will be deemed meritorious "when the allegations of the pleadings, if established at trial, would support recovery by plaintiff." *Poulis*, 747 F.2d at 869-70. Here, Woodson alleges that he informed Gressel that he intended to engage in self-harm at the direction of a voice in his head, but that Gressel failed to take any meaningful action despite knowing that Woodson had harmed himself in the past. Because of her inaction, Woodson alleges that he succumbed to the voice and "seriously" cut himself while in his cell. As evidenced by the fact that some of Woodson's claims have already survived a motion to dismiss, these allegations, if established at trial, could support a potential recovery. This factor weighs heavily against dismissal.


Finally, the Court concludes that Woodson's behavior, if unsanctioned, has the potential to undermine "the public interest in preserving the integrity of the judicial system." *Derzack*, 173 F.R.D. at 416. As explained by one court:

> Our legal system is built on rules and procedures. Litigants who bring matters before this court must conduct themselves in an appropriate fashion. ... Litigants who avail themselves to the jurisdiction of the court to seek redress must conduct themselves within the orderly administration of justice and the rules of the court.

*Perna v. Electronic Data Systems, Corp.*, 916 F.Supp. 388, 401 (D.N.J. 1995). Settlement negotiations are an integral part of that judicial process. *Derzack*, 173 F.R.D. at 416 (noting that the inherent powers of the court extend to matters such as discovery and settlement negotiations) (quoting *Chambers*, 501 U.S. at 44). By forcing Gressel, her attorney, and the Court's staff to confront offensive materials while engaged in a good-faith effort to equitably resolve and adjudicate his claims, Woodson engaged in sanctionable misconduct while "under the authority and jurisdiction of the . . . District Court and its rules and procedures." *Id.* (quoting *Perna*, 916 F.Supp. at 400). The adverse impact on the legal system from using federal court proceedings as an excuse to transmit pornographic content is obvious.

The final step in the *Poulis* analysis is to weigh the above factors "in order to assure that the 'extreme end' sanction of dismissal or default is reserved for the instances in which it is justly merited." *Poulis*, 747 F.2d at 870. As noted above, the Court finds that the first and fourth factors, in addition to the impact of Woodson's behavior on the judicial process, each strongly favor dismissal. The second and third factors favor dismissal, but only slightly, while the fifth and sixth factors weigh heavily against dismissal and in favor of alternative sanctions. Given the relative equilibrium of the *Poulis* factors, the serious nature of Woodson's underlying claims, the well-established principle that close calls should be "resolved in favor of reaching a decision on

the merits," and the fact that alternative penalties are available, the Court declines to employ the extreme end sanction of dismissal. *Hildebrand*, 2019 WL 1783540, at *3 (citing *Adams v. Trs. of the N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 870 (3d Cir. 1994)). Instead, the Court will issue the following order imposing alternative sanctions:

1. Within twenty days following the date of this Order, Woodson must submit another certified copy of his inmate account statement (or institutional equivalent) for the 6-month period immediately preceding the issuance of this Order, obtained from the appropriate official of each prison at which the prisoner is or was confined.

2. After the Court has received Woodson's certified inmate account statement, the Court will calculate an appropriate monetary sanction and direct Woodson to pay that same amount to attorney Cassidy L. Neal at her address of record as the party injured by the violation giving rise to the sanction.

3. Woodson shall not communicate directly with defense counsel without the prior approval of the Court, except he may send correspondence necessary to propound or respond to legitimate and appropriate discovery requests.

4. Under no circumstances shall Woodson transmit any materials of a sexual, explicit, or pornographic nature to any attorney or party in this action or request such materials from any party or attorney.

Should Woodson fail to comply with any of these directives, the Court will recommend that Woodson's claims against Gressel be dismissed, with prejudice, for sanctionable misconduct and a refusal to obey court orders. In the meantime, the Clerk will be directed to administratively close this case and stay all further deadlines and discovery until such time as Woodson has fully complied with the Court's instructions.

## III. Conclusion

For the reasons set forth above, Defendant's motion for sanctions is granted in part and denied in part. An order setting forth the terms of the sanction will follow.

RICHARD A. LANZILLO
United States Magistrate Judge

Dated: August 24, 2022